UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENTRELL D. WELCH,<br><br>        Plaintiff,<br> v.<br>JAMES DZURENDA, et al.,<br><br>        Defendants. | Case No. 3:23-cv-00224-ART-CLB<br><br>ORDER |

  Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis*. (ECF Nos. 1, 1-1). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

## I. SCREENING STANDARD

  Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

  In addition to the screening requirements under § 1915A, pursuant to the

Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT

In his Complaint, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at Ely State Prison ("ESP"). ECF No. 1-1 at 1. Plaintiff sues Defendants James Dzurenda, Patricia Hernandez, James Underwood, Tasheena Cooke, and William Gittere. *Id.* at 2. Plaintiff brings one claim and seeks monetary, punitive, and injunctive relief. *Id.* at 3, 13.

Plaintiff alleges the following. On June 2, 2020, during intake in Unit 7B, Underwood loudly exposed Plaintiff's protective custody status on tier. *Id.* at 3. Underwood threatened to send Plaintiff to general population without classification review. *Id.* On June 18, 2020, Plaintiff was moved to the protective segregation unit ("PSU") and was placed in a double cell with C. Gilbert, until Gilbert was removed in August 2020. *Id.* at 3-4.

On September 29, 2020, "eses, NV 13, and Sureno 13 dropouts"[1] approached Plaintiff and insinuated that Correction Officers ("C/Os") Amber Bodenhymier, Esquivel, and Clay told them that Plaintiff was snitching on them. *Id.* at 4. They told Plaintiff that if he did not leave, then Plaintiff would be gravely injured, attacked, or killed. *Id.* at 5. Between August and October 2020, C/Os Esquivel, Bodenhymier, and Clay spread "vile rumors" to cause Plaintiff grave harm or injury. *Id.* at 4. He alleges that they spread these rumors in retaliation to Plaintiff filing grievances against them. *Id.* Bodenhymier and Esquivel refused to collect Document 1564 or provide Document 3012 kites. *Id.* at 5.

On October 22, 2020, Esquivel attempted to force Plaintiff to double cell with a blood gang member after threats were made to Plaintiff. *Id.* Allred told Plaintiff if he did not agree to be in a double cell, then Plaintiff would receive a disciplinary write-up. *Id.* Plaintiff requested an open cell for disabled inmates to resolve the issue and because Plaintiff is disabled. *Id.* Allred denied Plaintiff's request and issued the disciplinary write-up. *Id.*

Bodenhymier, Esquivel, and Clay heard inmates yell over the tier all night that "niggers and snitches" will die in the morning. *Id.* at 6. On October 17, 2020, Plaintiff witnessed inmates attack and stab an African American inmate, Webb. *Id.* at 6. Plaintiff was told that he was next. *Id.* However, no C/Os intervened. *Id.* Plaintiff remained in his cell and refused to exit. *Id.* On October 18, 2020, while he was housed in Unit 4A, inmates verbally threatened that Plaintiff would be killed. *Id.* Ray Rivera refused to remove Plaintiff from the unit despite Plaintiff submitting kites and grievances. *Id.*

On December 4, 2020, Plaintiff was moved to Unit 4b after Dugan took Plaintiff's report. *Id.* at 7. On September 8, 2021, Cooke ordered that Plaintiff would be moved back to Unit 2B even though Plaintiff received threats to his

---

[1] NV 13 and Sureno 13 are gangs and are referred to as security threat groups.

safety. *Id.* On September 9, 2021, C/Os Clay, Kleer, and Rowley told Plaintiff that they were going to enjoy "beating [his] retarded ass and destroying all [his] shit." *Id.* Curtis Rigdney told Plaintiff that he had to go to the unit, or they were going to gas Plaintiff and use excessive force. *Id.*

Plaintiff complied and moved back to Unit 2B. *Id.* Upon entering the unit, Underwood, Dugan, and Hernandez heard loud threats that Plaintiff would be killed or injured over the tier. *Id.* at 8. In September 2021, Dugan heard threats to Plaintiff. *Id.* Underwood and Cox witnessed two inmates rush to Plaintiff's cell threatening to kill or sodomize him. *Id.*

Plaintiff was forced to move to Unit 8A. *Id.* at 9. He alleges that if he refused to move, he would have been hit with gas and excessive force. *Id.* On October 11, 2021, Underwood heard multiple threats directed at Plaintiff and that Plaintiff was called a rat and snitch. *Id.* On October 28, 2021, Hollisworth heard threats to Plaintiff and that Plaintiff was called a rat and snitch upon re-entry to the unit. *Id.* In October 2021, Hinckle and Dancer witnessed "NV13" loudly threaten to kill Plaintiff. *Id.* at 10.  Despite being aware of these threats, Cooke refused to remove Plaintiff from the unit. *Id.* at 9.

In June 2022, Melina Castro informed Plaintiff that she would not submit Plaintiff for a transfer to another facility due to PSU issues. *Id.* at 10. Castro told Plaintiff that he would go back to the PSU, be double-housed, or placed in administrative segregation indefinitely. *Id.* Plaintiff further alleges that Castro fabricated his RFS score from 12 to 19 points to stop a transfer. *Id.* Castro told Plaintiff that he burned his bridges with NDOC supervisors, because of his civil litigation. *Id.*

Patricia Hernandez also told Plaintiff that he would be indefinitely placed in administrative segregation if he did not return to the PSU. *Id.* at 11. Hernandez also confirmed that NDOC supervisors were disgruntled with Plaintiff because of his civil litigation and that Plaintiff could not be transferred from ESP. *Id.* On May

26, 2023, during administrative segregation review, Underwood told Plaintiff that he was sent there due to Plaintiff's civil litigation and grievances. *Id.*

Plaintiff alleges that he is entering three years of indefinite administrative segregation. *Id.* at 12. As a result, he suffers from psychological, emotional and physical injuries, such as muscle atrophy. *Id.* The Court interprets Plaintiff's allegations as stating that C/Os have labeled him as a snitch, that he is being threatened by other inmates who are in security threat groups, and that he has been placed in administrative segregation indefinitely.

Based on the allegations, the Court construes Plaintiff's complaint to allege the following claims based on different theories of liability:

- Violation of Fourteenth Amendment procedural due process—administrative segregation;
- Eighth Amendment deliberate indifference—failure to protect;
- First Amendment retaliation;
- Fourteenth Amendment—administrative grievance process;
- Claim under 28 U.S.C. § 1746;
- State law claims under NRS 208.165 and various subsections of NRS 209;
- Violation of Administrative Regulation ("AR") claims; and
- Fourteenth Amendment—violation of state law.

**A.     Procedural Due Process—Administrative Segregation**

Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* "[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."

6

*Id.* The Supreme Court held that a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner,* 515 U.S. 472, 484 (1995).

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms,* 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor,* 515 U.S. 472 (1995). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. *See Hewitt,* 459 U.S. at 477 n.9. An inmate has the right to notice and the right to be heard. *Mendoza v. Blodgett,* 960 F.2d 1425, 1430 (9th Cir. 1992). The Ninth Circuit has held that where the prisoner alleges material differences between the conditions in general population and administrative segregation, the prisoner's procedural due process claim should not be dismissed on the pleadings. *See Jackson v. Carey,* 353 F.3d 750, 755-57 (9th Cir. 2003).

Plaintiff fails to state a colorable procedural due process claim. He alleges that Defendants placed him in "indefinite" administrative segregation and has been in administrative segregation for three years. He alleges that he suffers significant, atypical hardship because isolation creates psychological and emotional harm as well as physical injuries, like muscle atrophy. Plaintiff, however, has not alleged when or if he was informed about the reasons for placing him in administrative segregation, whether Plaintiff had the opportunity to respond to those reasons, and whether prison officials have periodically reviewed Plaintiff's administrative segregation placement. Therefore, this claim is dismissed without prejudice. Plaintiff may, if he so chooses, file an amended complaint stating additional true facts that adequately allege a liberty interest,

such as the imposition of atypical conditions of confinement, and that Plaintiff was denied a hearing or review of his placement in administrative segregation.

### B. Eighth Amendment Deliberate Indifference—Failure to Protect

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

A prisoner seeking a remedy for unsafe conditions does not have to await a tragic event such as an actual assault before obtaining relief. *Id.* at 845. "An inmate seeking an injunction on the ground that there is a contemporary violation of a nature likely to continue must adequately plead such a violation." *Id.* at 845-46 (quotations and citation omitted). Plaintiff must plead that prison officials are "knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so." *Id.* at 846.

The Court finds that Plaintiff states a colorable Eighth Amendment deliberate indifference failure to protect claim against Underwood and Cooke. Based on the allegations, Underwood exposed Plaintiff's protective custody status, threatened to send Plaintiff to general population, witnessed multiple threats directed at Plaintiff, and refused to transfer Plaintiff to another unit. Cooke refused to move Plaintiff to another unit despite being aware of threats to

1  his safety.

2  In addition, Plaintiff alleges that Bodenhymier, Esquivel, and Clay told
3  other inmates that Plaintiff was a snitch to provoke violence against Plaintiff
4  because Plaintiff filed grievances against them. *See Valandingham v. Bojorquez*,
5  866 F.2d 1135, 1138 (9th Cir. 1989) (finding Plaintiff could state a claim for
6  violations of the Eighth and First Amendments based on his allegation that
7  officials labeled him a snitch in retaliation for filing a grievance, intentionally
8  subjecting Plaintiff to the threat of physical harm by other inmates as a result).
9  The Court construes the allegations against Bodenhymier, Esquivel, and Clay as
10 identifying them as defendants even though Plaintiff does not list them in the
11 caption of his complaint and finds that Plaintiff states a colorable Eighth
12 Amendment failure to protect claim against them.

13 The Court also finds that Plaintiff fails to allege sufficient facts to state a
14 colorable claim against Dzurenda, Hernandez, and Gittere. A defendant is liable
15 under 42 U.S.C. § 1983 "only upon a showing of personal participation by the
16 defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is
17 only liable for constitutional violations of his subordinates if the supervisor
18 participated in or directed the violations, or knew of the violations and failed to
19 act to prevent them. There is no respondeat superior liability under [§] 1983." *Id*.
20 Plaintiff does not allege that Dzurenda, Hernandez, and Gittere personally
21 participated in, directed the violations, or knew of violations by subordinates and
22 failed to act. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that
23 "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff
24 must plead that each Government-official defendant, through the official's own
25 individual actions, has violated the Constitution"). Therefore, this claim is
26 dismissed without prejudice against Dzurenda, Hernandez, and Gittere. Plaintiff
27 may, if he so chooses, file an amended complaint stating additional true facts
28 that allow the Court to infer that Dzurenda, Hernandez, and Gittere knew about

the treats to Plaintiff but failed to act to remedy such.

### C. First Amendment Retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is more than minimal. *Watson v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

The Court finds that Plaintiff states a colorable retaliation claim against Dzurenda, Underwood, Hernandez, Cooke, and Gittere. Based on the allegations, Plaintiff engaged in protective activity by filing lawsuits against NDOC officials. He also alleges that he suffered adverse actions when he was placed in administrative segregation, when Cooke transferred Plaintiff to another unit despite threats to his safety, and Plaintiff was denied a transfer from ESP because of his civil litigation.

In addition, as stated above, Plaintiff alleges that Bodenhymier, Esquivel, and Clay told other inmates that Plaintiff was a snitch to provoke violence against

Plaintiff because Plaintiff filed grievances against them. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989). The Court construes the allegations against Bodenhymier, Esquivel, and Clay as identifying them as defendants even though Plaintiff did not list them in the caption. This claim will proceed against Dzurenda, Underwood, Hernandez, Cooke, Gittere, Bodenhymier, Esquivel, and Clay.

### D. Due Process—Administrative Grievance Process

Prisoners have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process).

The Court finds that Plaintiff fails to state a colorable due process claim for prison officials rejecting his grievances. Based on the law, Plaintiff does not have a right to have prison officials process an inmate grievance in any specific way. As such, the Court dismisses this claim with prejudice as amendment would be futile.

### E. 28 U.S.C. § 1746

Plaintiff cites to 28 U.S.C. § 1746, which provides that unsworn declarations may have the same effect as sworn declarations if the plaintiff includes the following: "I declare under penalty of perjury that the foregoing is true and correct. Executed on [date]. [Signature]." ECF No. 1-1 at 3, 8, 9, 11. The Court finds no discernible claim asserted by Plaintiff under 28 U.S.C. § 1746. Accordingly, to the extent Plaintiff attempts to state a claim under 28 U.S.C. § 1746, the Court dismisses Plaintiff's claim with prejudice as amendment would be futile.

### F.   State Law Claims

Plaintiff cites several provisions of the Nevada Revised Statutes ("NRS"), including NRS 208.165, NRS 209.131, NRS 209.161, and NRS 209.181. ECF No. 1-1 at 4, 8, 10, 11, 12. NRS 208.165 provides that an inmate may execute any instrument by signing a declaration, under penalty of perjury, with the same legal effect as a notarized oath. The subsections of NRS 209 that Plaintiff cites also do not create a private right of action under which Plaintiff may sue. *See Ross v. Sandoval*, Case No. 2:17-cv-02386-APG-GWF, 2017 WL 6000342, at *12 (D. Nev. Dec. 4, 2017). Accordingly, to the extent Plaintiff attempts to state a claim under the NRS, the Court dismisses Plaintiff's state law claims with prejudice as amendment would be futile.

### G.   Administrative Regulation Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West*, 487 U.S. at 48. NDOC's administrative regulations address general administration as well as areas, including health care services and inmate regulations. The NDOC administrative regulations, however, do not create any right, liberty, property interest, or establish the basis for any cause of action. Accordingly, the Court dismisses any constitutional claims Plaintiff is attempting to raise based on violations of the NDOC's administrative regulations with prejudice as amendment would be futile.

### H.   Due Process—Violation of State Law Only

To state a colorable Fourteenth Amendment Due Process Clause violation, a plaintiff must establish: (1) a liberty or property interest that he or she has been deprived of, and (2) that the procedures followed by the State were constitutionally insufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The Supreme Court has held that allegations that a defendant violated state law are

12

insufficient to state a claim for violation of the Fourteenth Amendment's Due Process Clause. *Id.* at 222 (holding that "a 'mere error of state law' is not a denial of due process").

To the extent that Plaintiff attempts to state a Fourteenth Amendment due process claim because a defendant violated NDOC administrative regulations, Plaintiff does not and cannot state a colorable due process claim. Accordingly, the Court dismisses this claim with prejudice as amendment would be futile.

## III. LEAVE TO AMEND

Although the Court grants Plaintiff leave to amend, it does not grant Plaintiff leave to amend in any way that he sees fit. Plaintiff has leave to amend to allege additional true facts to show a Fourteenth Amendment Procedural Due Process claim—administrative segregation and an Eighth Amendment deliberate indifference failure to protect claim against Defendants Dzurenda, Hernandez, and Gittere. The Court does not give Plaintiff leave to assert new claims.

If Plaintiff chooses to file an amended complaint, he is advised that an amended complaint replaces the complaint, so the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). This means that the amended complaint must contain all facts and claims and identify all defendants that he intends to sue, including the claims found cognizable in this order. He must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Plaintiff must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of

the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights. He must file the amended complaint within 30 days from the date of entry of this order. If Plaintiff chooses not to file an amended complaint curing the stated deficiencies, this action will proceed on the Eighth Amendment failure to protect claim against Underwood, Cooke, Bodenhymier, Esquivel, and Clay and the First Amendment retaliation claim against Dzurenda, Underwood, Hernandez, Cooke, Gittere, Bodenhymier, Esquivel, and Clay only.

## IV.   CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court is directed to (1) file the Complaint (ECF No. 1-1) and (2) send Plaintiff a courtesy copy of the Complaint.

It is further ordered that the Clerk of the Court is directed to add Bodenhymier, Esquivel, and Clay as defendants to the docket sheet.

It is further ordered that the First Amendment retaliation claim will proceed against Defendants Dzurenda, Underwood, Hernandez, Cooke, Gittere, Bodenhymier, Esquivel, and Clay.

It is further ordered that the Eighth Amendment deliberate indifference failure to protect claim will proceed against Defendants Underwood, Cooke, Bodenhymier, Esquivel, and Clay.

It is further ordered that the Fourteenth Amendment procedural due process claim is dismissed without prejudice and with leave to amend.

It is further ordered that the 28 U.S.C. § 1746 claim is dismissed with prejudice as amendment would be futile.

It is further ordered that the state law claims under NRS 208.165, NRS 209.131, NRS 209.161, and NRS 209.181 are dismissed with prejudice as amendment would be futile.

1      It is further ordered that any constitutional claims based on violations of NDOC's administrative regulations are dismissed with prejudice as amendment would be futile.

       It is further ordered that Fourteenth Amendment due process claim related to the administrative grievance process is dismissed with prejudice as amendment would be futile.

       It is further ordered that the Fourteenth Amendment due process claim related to violations of state law is dismissed with prejudice as amendment would be futile.

       It is further ordered that if Plaintiff chooses to file an amended complaint curing the deficiencies of his complaint, as outlined in this order, Plaintiff will file the amended complaint within 30 days from the date of entry of this order.

       It is further ordered that the Clerk of the Court will send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same. If Plaintiff chooses to file an amended complaint, he should use the approved form and he will write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

       It is further ordered that, if Plaintiff chooses to file an amended complaint, the Court will screen the amended complaint in a separate screening order. The screening process will take several months.

///
///
///
///
///
///
///
///

It is further ordered that, if Plaintiff chooses not to file an amended complaint curing the stated deficiencies of the complaint, this action will proceed immediately on the Eighth Amendment failure to protect claim against Underwood, Cooke, Bodenhymier, Esquivel, and Clay and the First Amendment retaliation claim against Dzurenda, Underwood, Hernandez, Cooke, Gittere, Bodenhymier, Esquivel, and Clay only.

DATED THIS 20th day of December 2023.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE